UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

**DERRICK SINGLETON, *et al.*,**
   Plaintiffs,

v.

**JOHN Q. HAMM, *et al.*,**
   Defendants.

Case No. 1:24-cv-1081-CLM

## MEMORANDUM OPINION

Plaintiffs are a trio of former Alabama prisoners. They sue current and former members of the Alabama Board of Pardons and Paroles ("Board") and the Alabama Department of Corrections ("DOC") for failing to end their incarceration during the time period required by Alabama's Mandatory Release Law, Ala. Code § 15-22-26.2. The Board and DOC ask the court to dismiss Plaintiffs' claims. For the reasons stated below, the court **GRANTS IN PART** Defendants' motions to dismiss (docs. 30, 32).

## BACKGROUND

Plaintiffs allege they spent too much time in prison because the Board and DOC violated Alabama's Mandatory Release Law. So the court begins by discussing what that law is and how it works before explaining Plaintiffs' factual allegations.

**1.    The Mandatory Release Law**

As part of its effort to combat recidivism and prison overcrowding, Alabama enacted the original Mandatory Release Law in 2015. The original Mandatory Release Law "shortened the carceral sentences of everyone to whom it applies, converting the last months of their sentences from terms of incarceration into terms of parole." (Doc. 1, p. 13). To do so, the original Mandatory Release Law provided:

**§ 15-22-26.2. Mandatory supervision period on a straight sentence.**

> (a) A convicted defendant sentenced to a period of confinement under the supervision of the Department of Corrections shall be subject to the following provisions, unless the defendant is released to a term of probation or released on parole under the provisions of Chapter 22 of Title 15:
>
> (1) If the defendant is sentenced to a period of five years or less, he or she **shall** be released to supervision by the Board of Pardons and Paroles no less than three months and no more than five months prior to the defendant's release date;
>
> (2) If the defendant is sentenced to a period of more than five years but less than 10 years, he or she **shall** be released to supervision by the Board of Pardons and Paroles no less than six months and no more than nine months prior to the defendant's release date; or
>
> (3) If the defendant is sentenced to a period of 10 years or more, he or she **shall** be released to supervision by the Board of Pardons and Paroles no less than 12 months and no more than 24 months prior to the defendant's release date.
>
> (b) The provisions of this section shall not apply to a defendant convicted of any sex offense involving a child, as defined in Section 15-20A-4.
>
> (c) Prior to the defendant's release to supervision pursuant to this section, notice of such release shall be provided to the victim and interested parties through the victim notification system established pursuant to Section 15-22-36.2 and under the provisions of Section 15-22-36.

(Doc. 1, p. 13) (emphasis added). The original Mandatory Release Law did not apply to (1) individuals whose crimes of conviction occurred before

January 30, 2016; (2) individuals already released on parole; (3) individuals released to probation; (4) individuals convicted of a sex offense involving a child; and (5) individuals serving life sentences.

The Alabama Legislature tasked DOC with the job of releasing eligible prisoners to the Board's supervision. Plaintiffs allege that the Legislature's use of the mandatory "shall" in §§ 15-22-26.2(a)(1)-(3) stripped DOC of any discretion to refuse to release an eligible individual onto supervised release. They claim the original Mandatory Release Law only provided DOC with discretion in determining when to release eligible individuals onto supervised release within the range of months the statute provides. These so-called "mandatory release ranges" are summarized in the table below:

| Sentence Range (in years) | Original Mandatory Release Range (in months) |
|---|---|
| 0 < x < 5 | 3-5 |
| 5 < x < 10 | 6-9 |
| 10 < x | 12-24 |

Plaintiffs also allege that the original Mandatory Release Law did not give the Board discretion about whether to supervise released individuals. According to Plaintiffs, "the Board has no legal authority to decline to accept [an eligible] individual onto parole; it is required to supervise that individual." (Doc. 1, p. 16).

Five years after the original Mandatory Release Law went into effect, Alabama lawmakers passed a bill amending the Mandatory Release Law. The amended Mandatory Release Law, which became effective in January 2023, added a retroactivity provision that made the law applicable to all eligible prisoners regardless of their offense dates. It also shortened the mandatory release range for inmates sentenced to imprisonment for a term of greater than 10 years from 12-24 months to 10-12 months. The amended mandatory release ranges are reflected in the table below, which highlights the change in **red**:

3

| Sentence Range (in years) | Amended Mandatory Release Range (in months) |
|---|---|
| 0 < x < 5 | 3-5 |
| 5 < x < 10 | 6-9 |
| 10 < x | **10-12** |

Aside from the changes mentioned above, the amended Mandatory Release Law mimics the original Mandatory Release Law.

## 2.   Plaintiffs' Alleged Overdetention

Plaintiffs Derrick Singleton, Ray Traylor, and Deandra Whitehead are former Alabama prisoners. Each claims that he or she was eligible for supervised release before the end of their sentences under the Mandatory Release Law but were nonetheless kept in prison longer than allowed because of the policies and practices (or lack thereof) of DOC and the Board. Plaintiffs' complaint provides the following table illustrating their alleged overdetention:

| Plaintiff | Required Release Date | Actual Release Date | Length of Overdetention |
|---|---|---|---|
| Derrick Singleton | December 28, 2023 | February 27, 2024 | 61 days |
| Ray Traylor | December 24, 2023 | December 26, 2023 | 2 days |
| Deandra Whitehead | October 12, 2023 | February 13, 2024 | 124 days |

(Doc. 1, p. 5).

Defendants are current and former members of the Board and DOC. According to Plaintiffs, the Mandatory Release law requires the Board and DOC members "to maintain policies and practices to ensure that all eligible individuals are released from [DOC] custody to supervision by the Board by their latest mandatory release dates." (Doc. 1, p. 30). Yet

4

Plaintiffs contend the Board and DOC failed to abide by their statutory mandates, resulting in systemic overdetention.

Plaintiffs' complaint provides several actions and inactions by the Board and DOC that resulted in overdetention. For example, Plaintiffs allege that Defendants (1) maintain a policy or practice "that the [DOC] will not release any individual to supervision by the Board on mandatory release unless and until [the Board] approves the individual's home plan," (2) maintain "a policy or practice of releasing individuals from the [DOC's] custody to supervision of the Board on mandatory release only twice a month" on Tuesdays, and (3) maintain a policy or practice "of denying mandatory release to eligible individuals who have previously violated parole or probation." (*See* Doc. 1, p. 32, 36-37). Plaintiffs allege these policies and practices, among others, contributed to their overdetention.

### 3.   Plaintiffs' Claims and Defendants' Motions

Plaintiffs sue DOC and Board members in their individual capacities for numerous constitutional rights violations, negligence, and false imprisonment. Plaintiffs plead five counts in total, which the court summarizes below:

- **Count I**: 42 U.S.C. § 1983 Violation of Substantive Due Process Under the Fourteenth Amendment;
- **Count II**: 42 U.S.C. § 1983 Violation of the Eighth Amendment's Prohibition on Cruel and Unusual Punishment;
- **Count III**: 42 U.S.C. § 1983 Violation of the Ex Post Facto Clause;
- **Count IV**: Violation of Ala. Code § 6-5-170 for False Imprisonment;
- **Count V**: Negligence Under Alabama State Law.

(Doc. 1, p. 46-54). Plaintiffs base Counts I, II, IV, and V on their overdetention alone. Plaintiffs Singleton and Traylor bring Count III (§ 1983 claim for violation of the Ex Post Facto Clause), arguing that because

they were sentenced to terms of imprisonment greater than 10 years, they were supposed to be released 12-24 months before the end of their sentences under the original Mandatory Release Law. But since the amended Mandatory Release Law applies retroactively, their mandatory release range was reduced to 10-12 months, effectively keeping them in prison for up to 12 more months. Plaintiffs Singleton and Traylor argue this change in the Mandatory Release Law violates the Ex Post Facto Clause. Plaintiffs seek class certification for each of their claims.

The Board and DOC ask this court to dismiss Plaintiffs' claims (docs. 30, 32). According to Defendants, Plaintiffs claims must be dismissed because, among other things, they lack standing and fail to state a claim under Rule 12(b)(6).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).

This tenet, of course, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## DISCUSSION

As discussed above, DOC and the Board ask the court to dismiss Plaintiffs' claims for various reasons. Two of those arguments are controlling and require dismissal. First, Plaintiffs lack standing to bring their claims against the Board because Plaintiffs cannot establish traceability between the Board and their alleged overdetention. Second, Plaintiffs' § 1983 claims against DOC members are barred because the federal habeas corpus statute provides Plaintiffs' specific—and only—federal remedy for unlawful detention (here, overdetention).

### A.  Plaintiffs' Standing to Sue the Board (Counts I-V)

The Board argues that, because the Mandatory Release Law does not give its members authority to identify inmates eligible for supervisory release, calculate mandatory release ranges, or order release, Plaintiffs lack standing to bring claims for their alleged overdetention. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III," so the court addresses the issue of standing first. *See Diamaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

"To establish Article III standing, the plaintiff must show a causal connection between [its] injury and the challenged action of the defendant." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) (internal quotations omitted). This requirement, known as "traceability," asks a simple question: Who caused the plaintiff's injury?

The Mandatory Release Law provides a simple answer. DOC has custody over inmates eligible for supervisory release, so DOC bears the duty of releasing inmates on time. The Board merely receives released inmates. So only DOC—not the Board—could have caused Plaintiffs' alleged overdetention. *See* Ala. Code § 15-22-26.2(a)(1)-(3) (stating that a convicted defendant "under the supervision of the Department of Corrections . . . shall be released to the supervision of the Board of Pardons

and Paroles"). Because the Board did not—and could not—overdetain Plaintiffs, Plaintiffs cannot trace their alleged overdetention to the Board.

Eleventh Circuit precedent supports this conclusion. Consider for example *Lewis v. Governor of Ala.*, 944 F.3d 1287 (2019). In that case, a group of plaintiffs sued the Alabama Attorney General, seeking to enjoin an Alabama law that set a standard minimum wage and preempted local laws that provided a higher minimum wage. *Id.* at 1292-93. Sitting en banc, the court held that the plaintiffs could not establish standing because there was no "traceable" injury flowing from the actions of the Alabama Attorney General. *Id.* at 1299. Indeed, the challenged statute didn't "require (or even contemplate) 'enforcement' by anyone, let alone the Attorney General." *Id.* That fact alone "count[ed] heavily against plaintiffs' traceability argument" and ultimately doomed it. *See id.*

The Eleventh Circuit doubled down on this reasoning in *City of S. Miami v. Governor of Florida*, 65 F.4th 631, 640-41 (11th Cir. 2023). There, a group of organizations sued the Florida Governor and Attorney General, seeking to enjoin Florida's anti-sanctuary city law. *Id.* at 634. The problem for the organizations was, in part, that neither the Florida Governor nor the Attorney General played an enforcement role under the statute. *Id.* at 641. So just like in *Lewis*, the organizations could not establish a traceable injury. Instead, "any injury stem[med] from local law enforcement" because only local law enforcement had a duty to enforce the challenged statute. *See id.*

Our Plaintiffs have the same traceability problem as the *Lewis* and *City of S. Miami* plaintiffs. As explained above, the Board could not have caused Plaintiffs' injuries because the Board does not play an enforcement role under the Mandatory Release Law. Plaintiffs attempt to side-step this issue in their Response Brief by asserting that the Board's standing arguments "rely on facts contrary to those alleged in the complaint and depend on evidence extrinsic to the complaint." (Doc. 37, p. 32). But that's not true. The court need not—and does not—look any further than the Mandatory Release Law's plain language to see that Plaintiffs lack

8

standing against the Board. Plaintiffs cannot create from whole cloth duties for the Board that the statute does not provide. The Mandatory Release Law shoulders DOC—and only DOC—with the job of releasing inmates eligible for supervisory release. That means the Board could not have caused Plaintiffs' overdetention, and under Eleventh Circuit precedent, Plaintiffs' alleged injuries are not traceable to the Board. So the court must dismiss Plaintiffs' claims against the Board.

### B.   Plaintiffs' § 1983 Claims Against DOC (Counts I-III)

With the Board out of the equation, DOC asks the court to dismiss Plaintiffs' § 1983 claims against its members, arguing that Plaintiffs' sole federal remedy for their alleged overdetention was to file a habeas petition to seek release ***during*** their overdetention—not wait until after their release to seek money damages under § 1983. The court agrees.

"An inmate convicted and sentenced under state law may seek federal relief under two primary avenues: 'a petition for habeas corpus, … and a complaint under … § 1983.'" *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006) (quoting *Hill v. McDonough*, 547 U.S. 573, 579 (2006)). The habeas statute, 28 U.S.C. § 2241, authorizes federal courts to grant habeas remedies to state prisoners who are "in custody in violation of the Constitution," while § 1983 authorizes federal courts to grant money damages and equitable relief against any state actor who deprives a person of "any rights, privileges, or immunities secured by the Constitution." *See* 28 U.S.C. § 2241(c)(3); 42 U.S.C. § 1983. The court borrows the Fifth Circuit's chart to demonstrate the overlap:



*See Wilson v. Midland County*, 116 F.4th 384, 390 (5th Cir. 2024) (en banc).

Recognizing the overlap, the Supreme Court has held that habeas—as the more specific remedy—controls. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973). That means when a current or former prisoner could seek or could have sought the specific remedy of habeas, he cannot assert claims for general remedies under § 1983.

The Supreme Court's decisions in *Preiser v. Rodriguez*, 411 U.S. 475 (1973) and *Edwards v. Balisok*, 520 U.S. 641 (1997) illustrate the point. In *Preiser*, a group of prisoners sued state officials under § 1983 and sought an injunction restoring good-time credits. 520 U.S. at 475. The Court determined that if the prisoners were successful in restoring their good-time credits, the result would have been their earlier release from custody—a habeas remedy. *Id.* at 488-90. As a result, the Court held the federal habeas statute supplied the "exclusive [federal] remedy" for such claims and denied the prisoners' § 1983 claims as improper. *Id.* at 489.

*Preiser* involved claims for equitable relief. The Court expanded its reasoning to claims for money damages in *Edwards*. In *Edwards*, a state prisoner brought a § 1983 claim against prison officials, claiming they illegally revoked his good-time credits. 520 U.S. at 643. Attempting to differentiate his case from *Preiser*, Edwards requested monetary damages instead of equitable relief. *See id.* at 643-44. Still, the Court rejected his claims because "a win for the prisoner would 'necessarily imply the invalidity of the deprivation of his good-time credits' and get him out of prison 30 days sooner." *Crittindon v. LeBlanc*, 37 F.4th 177, 194 (2022) (Oldham, J., dissenting) (quoting *Edwards*, 520 U.S. at 646). "Thus, under *Preiser* and *Edwards*, a prisoner who sues to get out of jail (or get out of jail sooner) must use the specific remedy Congress enacted for that purpose: Habeas." *McNeal v. LeBlanc*, 93 F.4th 840, 843 (5th Cir. 2024) (Oldham, J., dissenting from denial of rehearing en banc).

*Preiser* and *Edwards* foreclose Plaintiffs' § 1983 claims here. DOC allegedly imprisoned each Plaintiff past the date they were supposed to be released. Singleton was allegedly overdetained 61 days, Whitehead 124 days, and Traylor 2 days. Each of them could have sought immediate release by bringing a habeas action in state court. *See* Ala. Code § 15-21-1, *et seq.* (Alabama's habeas corpus statute). If state habeas relief was not available, Plaintiffs could have filed a federal habeas action under 28 U.S.C. §§ 2241 and 2254.[1] *See* 28 U.S.C. § 2254(b)(1) (allowing a state prisoner to seek federal habeas relief if either he exhausted state remedies or state remedies were not available). Yet as far as the court can tell, none of the Plaintiffs did. Instead, Plaintiffs slept on their habeas rights, waited until they were released from prison, and then brought § 1983 claims seeking monetary damages. That approach is not permitted under *Preiser* and *Edwards*. Indeed, "[i]t turns *Preiser* and *Edwards* upside down to say that [Plaintiffs'] world flips" on the day of their release such that Plaintiffs unlock general § 1983 remedies when those remedies were out of reach during their overdetention. *See McNeal*, 93 F.4th at 843 (Oldham J., dissenting from denial of rehearing en banc).

It's true, as Plaintiffs point out, that Plaintiffs are not challenging the "validity of their convictions or sentences." (Doc. 37, p. 37-38). But that doesn't matter. The prisoners in *Preiser* and *Edwards* did not challenge their underlying convictions or sentences either; they sought release from prison. In both cases, the Court determined the prisoners' only remedy was habeas. That conclusion does not suddenly change upon a prisoner's release. So Plaintiffs' § 1983 claims against DOC are not cognizable and must be dismissed.

## C.   Plaintiffs' Remaining State Law Claims (Counts IV and V)

Plaintiffs' base their remaining claims against DOC for negligence and false imprisonment in state law. While the court doesn't have original jurisdiction over these claims, the court has discretion whether to exercise

---

[1] Not only does 28 U.S.C. § 2254(b) require state prisoners to first seek state habeas relief, if available, federalism dictates that if a state executive agency is allegedly violating a state legislative mandate, then the state's judiciary should get the first crack at deciding the dispute.

supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Id.* at 1089. Having dismissed all federal claims, the court finds that Plaintiffs' state-law claims are best left for the state courts to decide—particularly when Plaintiffs allege that the state executive branch failed to follow a directive of the state legislative branch. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966). So the court will decline to exercise supplemental jurisdiction and dismiss Plaintiffs' state-law claims without prejudice under 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For these reasons, the court will **GRANT IN PART** the Board and DOC's motions to dismiss (docs. 30, 32). The court will **DISMISS WITHOUT PREJUDICE** Plaintiffs' claims against the Board in Counts I-V but because Plaintiffs lack standing to bring those claims, the court does not grant Plaintiffs leave to amend them. The court will **DISMISS WITH PREJUDICE** Plaintiffs' § 1983 claims against DOC in Counts I-III. The court will decline to continue exercising supplemental jurisdiction over Plaintiffs' state-law claims against DOC in Counts IV and V and **DISMISS** those claims **WITHOUT PREJUDICE** under 28 U.S.C. § 1367(c)(3).

**DONE** and **ORDERED** on September 22, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE